455 S.E.2d 809

**Verlie BLAIR, Jr., Plaintiff Below, Appellant,**

v.

**FORD MOTOR CREDIT COMPANY and Town and Country Ford, Defendants Below, Appellees.**

No. 22228.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1995.

Decided Feb. 21, 1995.

William D. Stover, Beckley, for appellant.

Robert L. Brandfass, Bethann R. Lloyd, Crystal S. Stump, Kay, Casto, Chaney, Love & Wise, Charleston, for appellee, Ford Motor Credit Co.

Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, John S. Arrowood, James, McElroy & Diehl, P.A., Charlotte, NC, for appellee, Town and Country Ford.

PER CURIAM:

This action is before this Court upon an appeal from the final order of the Circuit Court of Raleigh County, West Virginia, entered on October 12, 1993. The appellant, Verlie Blair, Jr., contends that the Circuit Court committed error in entering a default judgment against him upon the counterclaim of the appellee, Ford Motor Credit Company. The appellant also contends that the Circuit Court committed error in dismissing the complaint against the appellee, Town and County Ford, for lack of jurisdiction. For the reasons set forth below, the final order of the circuit court is affirmed.

I

In March 1989, Melissa Ann Blair, the appellant's daughter, purchased a 1989 Ford Escort automobile. The automobile was purchased from Town and Country Ford, a North Carolina business, and financed by Ms. Blair through Ford Motor Credit Company. It is undisputed that the appellant agreed to guarantee the purchase. The complaint, in fact, states that the guaranty was delivered to the appellant by an employee of Town and County Ford, who drove to West Virginia and met the appellant in Beckley, West Virginia, for execution of the document.

The Escort was wrecked in 1990, and Ms. Blair purchased a 1989 Hyundi Excel from Town and Country Ford. The purchase price for the Hyundi Excel was approximately $6,000, whereas the purchase price for the Escort was approximately $10,000. According to the complaint, Town and Country Ford then proffered to the appellant, by mail, a "Substitution Agreement" transferring the collateral for the debt from the Escort to the Hyundi Excel. The language of the Substitution Agreement includes a statement that "all provisions of the Contract that apply to the Property now apply to the Substituted Property."

The appellant asserts that he refused to sign and return the Substitution Agreement. He further asserts that an employee or agent of Town and County Ford forged the appellant's name upon documents purporting to guarantee the debt of Ms. Blair for the Hyundi Excel. The appellees indicate that the appellant executed the Substitution Agreement and that no forgery took place.

## II

Upon various communications to the appellant, by Ford Motor Credit Company, to the effect that the account relating to the above transactions, No. CHA1718QKO, was delinquent and that an unfavorable report concerning the appellant had been made to national credit bureaus, the appellant, in January 1993, instituted the Raleigh County action. Alleging that he had no obligation with regard to the purchase by Ms. Blair of the Hyundi Excel and/or no obligation with regard to account no. CHA1718QKO, the appellant sought recovery for annoyance, inconvenience, emotional distress and damage to his credit reputation.

On February 17, 1993, Ford Motor Credit Company filed an answer which included a counterclaim against the appellant in the amount of $3,967.70, plus interest and costs, concerning the appellant's obligations upon the debt. Also on February 17, 1993, Ford Motor Credit Company and Town and Country Ford filed a joint notice of removal of the action to the United States District Court for the Southern District of West Virginia. 28 *U.S.C.* § 1446. Actual removal to federal court, however, was never consummated. Finally, in February 1993, Town and Country Ford moved to dismiss the appellant's complaint for lack of personal jurisdiction and insufficiency of service of process.

On June 30, 1993, Ford Motor Credit Company filed a motion for default judgment, and affidavit in support, with regard to its counterclaim. On July 7, 1993, the appellant filed an answer to the counterclaim. The appellant's answer essentially denied the allegations of Ford Motor Credit Company and asked that the counterclaim be dismissed.

Following a hearing, the circuit court, on October 12, 1993, entered an order granting a default judgment in favor of Ford Motor Credit Company in the amount of $3,967.70, plus interest. The order also dismissed the appellant's complaint against Town and Country Ford for lack of jurisdiction. That order was entered following a letter memorandum of opinion from the circuit court indicating that Ford Motor Credit Company was entitled to judgment upon its counterclaim and, further, that the appellant failed to establish that Town and Country Ford "can be sued in this jurisdiction under the facts presented."

## III

As reflected in the order of October 12, 1993, the manner in which the circuit court entered judgment for Ford Motor Credit Company was in the denial to the appellant of relief under *W.Va.R.Civ.P.* 60(b). That rule provides that, upon motion, a circuit court may relieve a party from a final judgment for, *inter alia*, "[m]istake, inadvertence, surprise, excusable neglect, or unavoidable cause...." The circuit court stated that the appellant "failed to demonstrate any legitimate reason or justification for his failure to timely respond" to the counterclaim and, thereby, failed to establish grounds for relief under *W.Va.R.Civ.P.* 60(b).

In *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974), this Court stated in syllabus point 5: "A motion to vacate a judgment made pursuant to *Rule* 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." That principle, as stated in *Toler,* has been cited often by this Court and recently in *Ross v. Ross,* 187 W.Va. 68, 70, 415 S.E.2d 614, 616 (1992). In similar language, this Court commented in *Intercity Realty Company v. Gibson,* 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970) that "it has been widely held that a motion to vacate a judgment under Rule 60(b) is addressed to the sound discretion of the court and that an abuse of such discretion must be shown before denial of the motion will be overturned on appeal."

A default judgment is authorized under *W.Va.R.Civ.P.* 55(b), when a party to litigation "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend...." Rule 55 expressly applies to counterclaims, as well as other claims. Moreover, Rule 55(c) provides that relief from a default judgment may be sought "in accordance with Rule 60(b)." As this Court stated in syllabus point 1 of *Intercity Realty, supra*, a default judgment obtained in accordance with the provisions of *W.Va. R.Civ.P.* 55(b) "is a valid and enforceable judgment and a motion to set aside such judgment will not be granted unless the movant shows good cause therefor as prescribed in Rule 60(b) of the aforesaid Rules of Civil Procedure."

One of our more important cases concerning default judgments is *Parsons v. Consolidated Gas Supply Corporation*, 163 W.Va. 464, 256 S.E.2d 758 (1979), where this Court announced in syllabus point 3:

In determining whether a default judgment should be entered in the face of a Rule 6(b) motion or vacated upon a Rule 60(b) motion, the trial court should consider: (1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party.

We reaffirmed that statement recently in syllabus point 2 of *Monterre, Inc. v. Occoquan Land Development*, 189 W.Va. 183, 429 S.E.2d 70 (1993).

Importantly, the above concepts have been applied by this Court to default judgments arising from counterclaims. *Wirt County Bank v. Smith*, 188 W.Va. 671, 425 S.E.2d 626 (1992); *J.D. Hinkle & Sons, Inc. v. Hatley*, 185 W.Va. 26, 404 S.E.2d 418 (1991); *Parker v. Knowlton Construction Company, Inc.*, 158 W.Va. 314, 210 S.E.2d 918 (1975); *Hamilton Watch Company v. Atlas Container, Inc.* 156 W.Va. 52, 190 S.E.2d 779 (1972).

In *Hamilton Watch Company*, the circuit court ordered that the time within which the plaintiff, Hamilton, may "answer or other-wise plead to the counterclaims be extended to March 1, 1969." Hamilton did not file a timely answer, and, instead, filed a motion to stay, upon the grounds that related litigation between the parties was pending in the United States District Court for the Northern District of West Virginia. The motion for a stay was never ruled upon by the circuit court, and on April 1, 1969, the defendant, Atlas, moved for default judgment. The circuit court entered default judgment for Atlas.

This Court, in *Hamilton Watch Company*, vacated the default judgment. Specifically, noting that it "may not have been most prudent" to neglect to answer the counterclaim, Hamilton's attorney, even if mistaken in his judgment, had "reasonable grounds to have believed that the court would stay the proceedings or at least that he would not be required to answer until the court ruled on such motion for a stay." 156 W.Va. at 58, 190 S.E.2d at 783. However, this Court, in *Hamilton Watch Company*, recognized that there was no "total omission to act" upon the part of Hamilton's attorney, and the rules were not "completely ignored." 156 W.Va. at 58, 190 S.E.2d at 783.

The circumstances before this Court lack the compelling quality which in *Hamilton Watch Company* resulted in the reversal of the circuit court. In *Hamilton Watch Company*, an answer to the counterclaim was to be filed by March 1, 1969, and on April 1, 1969, a motion for default judgment was made. In this action, the counterclaim of Ford Motor Credit Company was filed on February 17, 1993, and the appellant's answer thereto was not filed until July 7, 1993, and after a motion for default judgment was made. Thus, the delay in this action was much longer than in *Hamilton Watch Company*.

Moreover, unlike the circumstances in *Hamilton Watch Company*, no federal litigation was pending in this action. Here, no removal to federal court occurred. A joint notice of removal was filed by Ford Motor Credit Company and Town and Country Ford on February 17, 1993. Thereafter, on February 23, 1993, Town and Country Ford filed a motion to dismiss for lack of jurisdic-

tion. The motion to dismiss, stating that the Clerk of the United States District Court for the Southern District of West Virginia was "unable to locate any information regarding removal of this case," was filed with the Raleigh County Circuit Court and served upon the appellant. That event, however, did not prompt the appellant to file an answer to the counterclaim of Ford Motor Credit Company.

Even if the action had been removed, the appellant was obligated to file an answer. As *Fed.R.Civ.P.* 81(c) provides, in part:

> In a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after the service of summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest.

*See also* 32B Am.Jur.2d *Federal Practice and Procedure* 2520 (1982).

The record in this action demonstrates that no answer to the counterclaim of Ford Motor Credit Company was ever filed in federal court, nor was an answer to the counterclaim filed in the Raleigh County Circuit Court prior to July 7, 1993. *See W.Va. R.Civ.P.* 7(a) and 12(a).

As set forth above, the circuit court stated that the appellant "failed to demonstrate any legitimate reason or justification for his failure to timely respond" to the counterclaim. Unlike the facts in *Hamilton Watch Company*, there was a "total omission to act" from the time of the filing of the counterclaim until after a motion for default judgment was filed several months later. Considering all the circumstances of this action, we cannot say that the circuit court abused its discretion under the *Parsons* case, or other authority, in refusing to grant relief to the appellant under Rule 60(b). Rather, we believe that the ruling of the circuit court is "protected by the parameters of sound discretion," *Par-*

*ker, supra,* and, accordingly, the ruling of the circuit court is affirmed.

Nor would it be appropriate for this Court to conclude that the circuit court committed error in dismissing the appellant's complaint against Town and Country Ford for lack of jurisdiction. Relevant to the ruling of the circuit court upon that issue are this State's long-arm statutes, *W.Va.Code,* 31–1–15 [1984], and *W.Va.Code,* 56–3–33 [1984].

■ In syllabus point 5 of *Abbott v. Owens–Corning Fiberglas,* 191 W.Va. 198, 444 S.E.2d 285 (1994), we held:

> A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in *W.Va.Code,* 31–1–15 [1984] and *W.Va.Code,* 56–3–33 [1984]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.

■ In this action, the circuit court determined that the appellant failed to establish that Town and Country Ford "can be sued in this jurisdiction under the facts presented." Although Town and Country Ford filed a motion to dismiss the appellant's complaint, the brief of the appellant before this Court states that "[t]he effect of the ruling of the trial court was a summary judgment ..." in favor of both Ford Motor Credit Company and Town and Country Ford. A hearing in this action was conducted by the circuit court in August 1993. No transcript or recapitulation of that hearing is part of the record before this Court, and, specifically, this Court does not have the guaranty agreement allegedly signed by the appellant in West Virginia. Nor is the Substitution Agreement, containing the alleged forged signatures, before this Court. Upon an examination of the record, this Court is of the opinion that the appellant has not met the requirements set forth in *Abbott*, and, in that regard, the ruling of the circuit court is affirmed.

Therefore, for the reasons set forth above, the final order of the Circuit Court of Ra-

leigh County, entered on October 12, 1993, is affirmed.

Affirmed.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.